WILLIAM H. DIX, DEFENDANT IN ERROR, v. UNION ICE
COMPANY, PLAINTIFF IN ERROR.

Argued November 6, 1907—Decided February 24, 1908.

1.  Under the act (*Pamph. L.* 1904, *p.* 156, § 13) regulating the
    safety of employes in all places where the manufacture of goods
    of any character is carried on, and which requires that, when-
    ever practicable, all vats, &c., shall be properly guarded, vats
    containing hot water used in an ice factory to loosen the ice from
    cans must be guarded, if practicable, and whether it is practi-
    cable is a question for the jury.  The purpose of the act is to
    surround the workman with more protection than the common
    law gives him.
2.  A physician having in his testimony described wounds which
    were the result of an accident alleged to have resulted from the
    negligence of the defendant, as healing very slowly, his . further
    examination as to the likelihood of the wounds breaking out
    afresh, and the effect upon the plaintiff of such an occurrence,
    was not objectionable as being speculative.   .

On error to Essex Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justice BERGEN.

For the plaintiff in error, *Lindabury, Depue & Faulks.*

For the defendant in error, *Joseph A. Beecher.*

The opinion of the court was delivered by

BERGEN, J.   The first three assignments of error relate to
the refusal to nonsuit, and at the close of the case to direct
a verdict.  The plaintiff was a machinist and engineer in the
employ of the defendant company, and was sent by his em-
ployer to the tankroom on the second floor of the building
to thaw out a compressed air pipe, which was used in operat-
ing a crane which carried blocks of ice from one place to
another.   In this tankroom were two dipping tanks into
which the cans containing blocks of ice were dipped in order
to loosen the ice from the can.   The tanks were about nine-

teen inches wide, forty inches long and fifty inches deep, filled with water kept very hot by the injection of steam into it. The tankroom was full of steam, preventing the plaintiff from seeing where he was going, and he inadvertently stepped into one of the dipping tanks and was seriously injured.

We think the evidence does not justify the inference that the plaintiff was sufficiently acquainted with the situation to know its dangers, and that the jury had a right to infer from the evidence that the place was not a reasonably safe one in which to set at work a servant who had not been instructed with regard to the conditions existing. It appears that all of the openings, except the two steam vats, were covered, and that the plant was not being operated when he was sent there, and could not be until the repair, which the plaintiff was sent to assist in making, had been completed. It did not appear that the plaintiff knew that the steam vats were uncovered, or in any condition different from the other openings in the floor, and ordinary care would seem to require that when the plant was not at work all of the vats should be covered, or the existence of the danger called to the attention of the plaintiff.

We think that the trial court was justified in refusing either to nonsuit or direct a verdict.

The fourth assignment of error challenges the admission of the evidence of the attending physician regarding the likelihood of the breaking out anew of the sores resulting from the accident, and its effect upon the plaintiff's ability to work or use his leg as an ordinary man could. The question was objected to as being speculative. The physician had described the wounds as healing very slowly, and then said that portions of a scar at a lower part of the leg looked as if it might break out again. The question regarding the effect of such breaking out, if it did occur, can hardly be called speculative. The question related to the effect that would be produced if the wound should not prove to be sufficiently cured to prevent what the physician said its condition indicated might happen.

Assignments numbers five and six were not argued, and assignments numbers seven to fourteen, inclusive, relate to the admissibility of the testimony of two witnesses, Taylor and Fraentzel, as to the practicability of protecting the tanks so as to modify the danger.

The law relating to factories (*Pamph. L.* 1904, *p.* 156, § 13) requires that "whenever practicable, all vats, pans, &c., of every description shall be properly guarded." The title to the act is "An act regulating the age, employment, safety, health and working hours of persons, employes and operatives in factories, workshops, mills and all places where the manufacture of goods of any character is carried on," &c. The defendant's factory falls within this description, and the law requires that the vats should be properly guarded if practicable, and whether it was practicable to guard the vats was a question for the jury, and on this point it would seem that the evidence admitted was competent.

Assignments fifteen and sixteen allege that the court erroneously permitted the witness Herman to testify that there would be no difficulty in having a flap door over the hot-water vat, and that it would not interfere with the operation of the plant in dipping the ice in the hot-water bath. This witness had worked in the factory and was familiar with the practical working of the plant, although he had been there but three days. The operation, as described by this witness, was one in which he took part, except so far as his description of the use of the cover, and as to this he simply described what could be done without difficulty, based upon his knowledge of the work. We see no error in this.

Assignment number seventeen was not argued, and numbers eighteen, nineteen and twenty all refer to alleged errors in the charge of the trial judge.

Referring to the factory statute the court said: "The plain purpose of the statute was to surround a workman with something more than the protection which the common law gave him." The language of the act seems to indicate that it is made the duty of the master to guard the vat, irrespective

of the question whether there was an obvious risk or not, and in that view the charge is justifiable.

The court also charged that the law cast upon the defendant the duty to guard, in a proper manner, this tank, provided it was practicable to do so, leaving the question to the jury, and that if it was practicable to guard it the defendant company was in default for not doing so. We see no error in this.

That part of the charge which refers to the risk assumed by the workmen is also excepted to. As we interpret the charge it was to the effect that if the statute was applicable, then the risk assumed by the workmen was only such risk as would be present if the vat was properly guarded. In other words, if the guarding of the vat, as required by law, was practicable it became the master's duty to so guard it.

If the duty is imposed upon a master by the statute, and he neglects to perform that duty, and such neglect causes the accident, the non-observance of such statutory duty would, in the absence of any contributory negligence on the part of the defendant, render the master liable. We see no error in this part of the charge, and are of opinion that the judgment below should be affirmed.